ELIZABETH POWER *vs.* THORNTON A. JENKINS
and others—THORNTON A. JENKINS and others
*vs.* ELIZABETH POWER.

A testator bequeathed a house and lot, and other property, to his wife for life, *or* $1000 a year for life, at her election, "and to which of either she agrees to, *at her death,* the *amount of above* with whatever may accumulate on the same, is to go equal halves to" his two children, "but should either of them *not survive,* then it is to go to *their heirs* or to the *surviving heirs of either,* in case the other leaves none." He also bequeathed to his sister-in-law, $30 a year for life, "and at her death it is to go back equal to" his two children, "or to their *surviving heirs.*" "*The balance* of" his "estate," he then directed "to be divided equal halves between" his said two children, who were a son and a married daughter. The widow elected to take the life annuity of $1000. The son, together with the daughter and her husband, then executed a *mortgage* of the testator's *real estate* to the widow and the other annuitant, to *secure the payment* of their annuities. The son then married and died *without issue,* leaving a will, by which he devised all his estate to his wife. The daughter subsequently died *leaving children.* A bill was then filed by the annuitants, for a sale of the *mortgaged property* to pay their annuities, and the same having been sold, and the proceeds brought into court for distribution; HELD:

1st. That the bequests in this will, to the testator's wife and sister-in-law, are *pecuniary legacies,* which are not, either by the terms of the will, or by operation of law, *chargeable* upon the *real estate.*

2nd. Even if the widow, by reason of her rights under the act of Assembly as purchaser, "with a fair consideration," could charge *her annuity* upon the realty, neither the other annuitant nor the *parties* to whom the annuities are given *after the death* of the life annuitants, can do so.

3rd. The *mortgage* created a lien upon the estate conveyed by it, in favor of the mortgagees *only,* and to secure to them the payment of their respective annuities for life, and when they are paid the *whole purpose* of the mortgage will be gratified, and the property will *revert* to the mortgagors, as if no such mortgage had been made.

4th. By the *residuary clause* of the will, the mortgaged real estate was vested *in fee,* in the testator's two children, and the proceeds of sale, subject only to the claim of the life annuitants, belong, one-half to the children of his daughter, subject to the curtesy rights of her surviving husband, and the other half to the widow and sole devisee of his son.

CROSS-APPEALS from the Circuit Court for Baltimore City.

John Power, of Baltimore city, died in 1840, leaving a will, executed on the 15th of April 1840, and admitted to probate

Power *vs.* Jenkins, *et al.*

on the 8th of July 1840, by which, after directing his debts to be paid, he devised as follows:

"I leave and bequeath to my beloved wife, Ann, the house and lot on the corner of Eutaw and Ross streets, now in fee, during her natural life, and also seven hundred dollars for to support the house, with as much of the furniture as she may require to furnish it, but should she not accede to the same, she is then to have one thousand dollars a year during her natural life, and to which of either she agrees to, at her death the amount of above, with whatever may accumulate on the same, is to go equal halves to my two children, but should either of them not survive, then it is to go to their heirs, or to the surviving heirs of either, in case the other leaves none. I also bequeath and leave to Isabella Power, the wife of my late brother William Power, the sum of thirty dollars a year during her natural life, at her death it is to go·back equal to my two children William and Anne, or to their surviving heirs. I also leave and bequeath to my sister Isabella Dill, now in Ireland, one hundred dollars, to be paid to her or her attorney, by my executors, one year after my death. The balance of my estate is to be divided equal halves between my two children William Power and Anne Power Jenkins, with a request, that my son William and my son-in-law Thornton A. Jenkins, will use their parts to the best possible advantage for their rising generation."

After the death of the testator, his widow Ann Power, *elected* to take the *annuity* of $1000, for her life, as provided for by his will, and on the 28th of August 1841, William Power and Thornton A. Jenkins, and Anne his wife, united in a *mortgage* to the widow and Isabella Power, (the other annuitant for life of $30 named in the will,) of three parcels of property of which the testator died seized in fee, viz., one at the corner of Eutaw and Ross streets, one at the corner of Howard and Ross streets, and the other at the corner of Franklin street and John Alley, to *secure the punctual payment of both annuities.* This mortgage recites the will of John Power, and the *election* of Ann Power his widow, to take the $1000 per annum during her life, upon the conditions and limitations

contained in the will, which election is evidenced by her sign-ing and sealing these presents, and then conveys the property to her and the said Isabella Power, "for and during the period of their respective lives," with the *proviso*, that if the grantors, or either of them, shall pay or cause to be paid, to the said Ann Power, the said sum of $1000 per annum, on the first day of July, in each and every year during her life, and to the said Isabella Power, the said sum of $30 per annum, on the first day of July, in each and every year during her life, "then these presents and every matter and thing therein contained, shall cease and be utterly null and void."

William Power, subsequently married Elizabeth Frick, and died in 1852, without issue, leaving a will duly executed, by which he devised his entire estate to his said wife, making her his sole devisee and legatee. Anne Jenkins, also, subsequently died, leaving two infant children, Virginia Jenkins and Sarah Jenkins, and her husband Thornton A. Jenkins, surviving her.

On the 7th of January 1854, the *bill in this case* was filed by Ann Power and Isabella Power, the two annuitants under the will, and the mortgagees in the aforesaid mortgage, and Elizabeth Power, widow of William Power, against Thorn-ton A. Jenkins, and his two infant children, praying, by rea-son of the annuities remaining much in arrear, the rents of the mortgaged property being insufficient for their payment, for a sale of the whole of the mortgaged premises; for an in-vestment of a sufficient amount of the proceeds of sale, to pay regularly the annuities out of the income of such investment; and for a present distribution of the balance of the proceeds of sale, one-half to the complainant, Elizabeth, and the other half to the defendants, Thornton A. Jenkins and his children, according to their respective interests.

Thornton A. Jenkins, by his answer, agreed to the pro-priety and necessity of the sale as prayed for, but claimed, that upon the true construction of the will of John Power, the whole of his estate, upon the death of William Power with-out issue, vested in the respondent and his children, subject only to the annuities aforesaid, payable for life to Ann and Isabella Power; or that, at least, in case that construction of

the will should be incorrect, such principal sum as might be necessary by its investment to provide for those annuitants, would, at the death of such annuitants, be distributable to respondent and his children, to the exclusion of Elizabeth Power, by reason of the death of her husband, William Power, without issue.

The further necessary proceedings and proofs having been taken, a decree was passed, directing the property to be sold and the proceeds of sale to be brought into court, reserving all questions of right and distribution between Elizabeth. Power and Thornton A. Jenkins, and his children. A part of the property, viz., the houses and lots on the corners of Eutaw and Ross, and Howard and Ross streets, respectively, having been sold and the proceeds brought into court for distribution, the matter reserved by the decree was considered and determined by the court, and a further decree was thereupon passed, directing the trustees to invest a principal sum, sufficient by its income to pay the annuities of $1030, ordering the payment of the same to the annuitants, and after their death, the payment of the principal sum so invested to the two children of Anne Jenkins, or in case of the death of either of them, to such one as should be living at the death of said annuitants; and as to the surplus proceeds of sale, left after making the investments aforesaid, the same were decreed to be equally divided between the said children of Anne Jenkins, and the said Elizabeth, widow of William Power, as his devisee. The rights of Thornton A. Jenkins, as tenant, by the courtesy, were reserved. The following is the opinion of the court below, (KREBS J.) delivered upon passing this decree:

"To the questions submitted to the court in regard to the construction of certain clauses in the will of John Power's, I am of opinion, that the devise in the second clause of the will to his two children, comprised that portion of his estate, which, in the previous part of the said clause, he had set apart, or devoted to the use and support of his wife during her life, being either the house at the corner of Eutaw and Ross streets, and the sum of $700, or the annuity of $1000, as she might

in the exercise of the option given to her in the will select the one or the other. The property, which in this clause of his will he devises to his two children, they are to take *"at her death,"* which plainly indicates that it is the same which she is to hold and *enjoy during her life.* I differ, however, from the solicitors of both parties in their views as to the intention of the testator, expressed in the use of the words, "should either of them not survive." I do not think he meant to declare in what manner the *shares* in the said property *devised to them respectively* should go, after it had vested in them, in case "either of them should not survive," but that his purpose was to direct in what manner *the property devised to his wife for life, should go,* in case either of his children should not survive her. After providing that what he had given to her "at her death should go equal halves to his two children," he says, but should either of them not survive, then *'it'* is to go to their heirs, not his or her half, but *'it,'* evidently meaning the property which, *at her death,* was by the will to be given to other objects of his bounty. He intended to designate in what manner the property should go after her death, not in what manner it should go after it had vested in his two children, and either of them died. This view I think is sustained by subsequent clauses in this will. He leaves to Isabella Power "the sum of thirty dollars a year, during her natural life, and, after her death, it is to go back to (his) two children William and Anne, or *to their surviving heirs."* To them, if they should be living at the time of her death, if not, to their heirs surviving. The testator further devises in these words: 'The balance of my estate is to be divided equal halves between my two children William Power and Ann Power Jenkins, with a request that my son William and my son-in-law Thornton A. Jenkins, will use their parts to the best possible advantage for their rising generation.' In this clause, the testator gives a large part of his estate to his two children, but he gives no direction as to the manner in which it shall go upon the death of either. It was quite as important that he should have given such direction in reference to this portion of his property devised to them, as it was in reference to that devised

o

in the former clause of his will.    The omission to do so in this
clause, furnishes a strong argument against the position that
he intended to do so in the others.    And further, I think it
may be fairly contended, that the request contained in the
clause above quoted, as to the manner in which he wished his
son and son-in-law, to *use their parts*, was designed by the
testator to apply to all the property devised to them in his will,
and that it all vested in them respectively, simply with that
request accompanying it, and without any provisions or direc-
tions in regard to its course after the death of either.    If this
view be correct, William Power having died before his mother,
this devise can never take effect in regard to him.    Mrs. Jen-
kins being also dead, leaving children, they, if living at the
time of the death of Mrs. Power, will take the property de-
vised to her for life, inasmuch as, in my opinion, 'the surviving
heirs of either,' mentioned in the will, mean the *surviving
children*.    Surviving another, implies, having lived at the same
time with him, and living longer or outliving him; the surviv-
ing heirs of either, mean, those heirs who were living at the
same time with either, and survived either; evidently denoting
the children of either of these devisees.    If, however, I am in
error in the above construction given to this will, and the de-
vise to William Power, in the said second clause, is to be re-
garded as a remainder vested in him in his life time, I am still
of opinion, that upon his death, without children, it will be-
come the property of the children of Mrs. Jenkins    I do not
regard this as a devise over after an indefinite failure of issue.
or heirs, and therefore not good as an executory devise.    It is
to the '*surviving* heirs of either, in case the other leaves none.'
It must take effect during lives in being, because the surviving.
heirs of either mean heirs living at the same time with either
and surviving him or her.    The devise being 'to the *surviving
heirs of either* in *case* the *other* leaves none,' the testator could
not have meant an indefinite failure of heirs, because the par-
ties standing to each other in the relation of brother and sister,
neither could be said to die without heirs or to leave no heirs,
whilst the other left heirs surviving, and the very persons who
would answer to the class of the surviving heirs of the one,

would be the heirs of the other. The testator then in using the words, in case the 'other leaves none,' or no heirs, must have meant in case the other leaves no children. All the residue of the estate, except what may be required by investment to raise the annuity to the widow of $1000 per annum, I am of opinion, vests in equal shares in the devisee of the testator's son William, and in the heirs of Mrs. Jenkins. The question in regard to any allowance to Thornton A. Jenkins, out of the funds of this estate, as tenant by the curtesy, will be considered hereafter."

From that portion of the decree which distributes the *surplus*, Jenkins and his children appealed, and from that part which distributes the principal of the fund invested after the life annuities shall cease, Elizabeth Power appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*I. N. Steele* and *J. M. Campbell*, for Elizabeth Power, insisted, that the fund here is *real estate*, and was such when the will operated upon it, and, having been converted into personalty since the testator's death, the appellees can only claim it as the devisees of the *realty*, under the will, or that by the will a *charge* is made upon the real estate to pay the annuities. They then argued, as to the construction of the *first clause* of the will, by which, after the devises to the wife, of a house and lot and an annuity of $700, or at her election, an annuity of $1000, he devises, "And to which of either she agrees to, at her death, the *amount of the above, with whatever may accumulate on the same,* to go equal halves to my two children, but *should either of them not survive*, then it is to go to their *heirs, or to the surviving heirs of either, in case the other leaves none.*"

1st. *As to the devise over, what it embraces and to what it entitles.* It may well be argued, that the devise over of *"the amount of the above, with whatever may accumulate on the same,"* only applies to the accumulations which the testator supposed, might arise, and that he intended the annuity to

57      v. 13.

cease on the death of his wife, but however this may be, it is insisted: 1st. That the devise over, following the devise of the annuity, for life, to the widow, was not, according to its true construction, a devise absolutely, or in perpetuity, of such a principal sum as would be sufficient, by its investment, to produce that annuity; that there is nothing previously devised to the widow, to which such limitation over can apply, except the specified property there mentioned, viz: the house and furniture; and that if it does apply to the annuity, yet, as the devise to the widow is of nothing but an annuity for life, and that too an annuity *de novo, created by the will,* the devise over of *"the amount of the same,"* is, at most, but a devise over of the *same,* or a similar annuity *for life* and not in *perpetuity.* 1 *Craig & Phillips,* 274, *Blewitt vs. Roberts,* and same case in 10 *Simons,* 491. 8 *Eng. Law & Eq. Rep.,* 178, *Yates vs. Madden.* 9 *Beavans,* 479 *Hedges vs. Harpur.* 2nd. That even if it were held to be a devise over of a principal sum, sufficient to produce the annuity, there is nothing in the will creating a *charge* for it, or the annuity, on the *real estate* of the testator, and entitling the devisees, by force of the devise, alone and independently of the mortgage, to have that principal sum or the annuity raised out of the sale of the realty. 10 *G. & J.,* 143, *Stevens vs. Gregg.* 6 *Gill,* 320, *Cornish vs. Wilson.* 2 *Johns. Ch. Rep.,* 614, *Lupton vs. Lupton.* If this position is sustained, and this devise is not a charge upon the real estate, the whole case for the other side fails, and the court will not be called upon to construe an almost inexplicable will, and we confidently insist, that this position is correct. There is nothing on the face of the will to charge these annuities upon the land; they cannot be considered as any thing more than mere *pecuniary legacies,* and if this will makes them a *charge* upon land, then every possible will will make *every legacy* such a charge. But the counsel for the other side says, if it is admitted the *will* does not make a charge, still the Act of 1798, ch. 101, comes in aid and makes the widow a purchaser, for a fair consideration, of the devise to her, and therefore this devise is a *charge* upon the realty. That act only says, the widow is a purchaser of

what is given her by the will, but does not aid the *construction* of the will; its only effect is to make her *title* superior to that of other legatees. But suppose this would help the widow, how can it aid the *remainder men?* They clearly have no claim to be considered as purchasers for a fair consideration. 3rd. That even if there were such a charge on the realty, it gives no title to the realty, but only a remedy against it for the payment of the legacy, and could not because of the right to such remedy, be held to be a devise, either of the real estate or of the investment made by its sales, so as to render any such investment, for the previous annuitants, the object or the subject matter of the devise, and that therefore the devisees over were not entitled to the present decree for the payment over to them of such investment, at the death of the annuitants, except only by showing an existing present right to have their legacy paid, or secured, out of the realty, and such a right as would, independently of the mortgage, and by force of the devise and charge alone, have entitled them to that decree, and that, in this case, the devisees over had no such right, and have shown no case, by the proceedings, entitling them to enforce the charge against the investment, resulting as a part of the realty of the estate, after the purposes of the mortgage were gratified.   2 *Cox*, 15, *Gawler vs. Standerwick.    Ward on Legacies,* 289, *et seq.* in 18 *Law Lib.*, 149.   1 *Roper on Legacies,* 931.   4th. That the whole proceedings below being based on the mortgage by the children, to secure only the payment of the two annuities for life, the title to the equity of redemption in the mortgaged premises, and therefore, to the proceeds of sale, after the gratification of the claims of the annuitants, remained in the mortgagees, as if no such mortgage had been made, and as a right springing from the mortgage, which gave no title out of them to any but the secured annuitants, and that under the proceedings and the case, as presented and shown by them, the appellees were not entitled, by force of the devise over, to claim the equity of redemption, or the investment resulting to the mortgagees after the discharge of the annuitants' claims.   The mortgage thus given by the parties can have no effect upon the construction of the will, (1 *H. & G.*, 74, *Ringgold vs. Ringgold;* 11 *Md. Rep.,*

29, *Hutchins vs. Dixon;)* nor change their rights thereunder, nor was it ever *designed* to have such effect.

2nd. *As to who is entitled under this devise over:* On this question the appellant insists:

1st. That the two children took an absolute estate *defeasible only by their not surviving the testator,* and that, therefore, upon William's survivorship of the testator, his title to the moiety or half of the bequest *became vested* and absolute, and passed to his legatee; that the words of survivorship as here used refer to the death of the *testator,* and not to that of the *widow,* as the period of the *vesting* of the legacy, and, in legal construction, operate only to prevent a lapse, and not to postpone the vesting until after the death of the widow; that the mere fact, that the period for the actual enjoyment of the legacy is after the expiration of the life-estate, does not alter this construction of the words of survivorship, and, by referring them to the death of the life-tenant, prevent the vesting until that period, unless, by the clear intent of the will, the vesting, as well as the enjoyment, is postponed until that period, which, it is insisted, is not the case as to this will; and that a contrary construction would render the bequest over *contingent,* from the death of the testator to that of the widow, is contrary to the rules of law which favor vesting, is not required to give effect to any clear intent of the testator, but might, on the contrary, by lapse, defeat that intent. 3 *Coke,* 19, *Boraston's Case.* 2 *Roper on Legacies,* 1377 to 1381 and *note* 3, at page 1379. *Lewis on Perpetuities,* in 52 *Law Lib.,* 339 to 341. 8 *Barn. & Cress.,* 231, *Long vs. Prigg.* 5 *Barn. & Ald.,* 636, *Clayton vs. Lowe.* 9 *Leigh,* 79, *Hansford vs. Elliott.* 4 *Geo. Rep.,* 461, *Vickers vs. Stone.* 1 *Dev. & Batt. Ch. Rep.,* 42, *Gill vs. Weaver.* 9 *Md. Rep.,* 31, *Dorsey vs. Dorsey.*

2nd. That the words, *"if either of them does not survive, then it is to go to their heirs,* or to the surviving heirs *of either, in case the other leaves none,"* did not render the previous devise to the children contingent until the death of the widow, or divest the vested estate of William in the one-half, because of his death before the widow; that these words of survivor-

ship were only intended to designate the manner in which the estate, previously vested in William, was to go at his death, and were used as *words of limitation* of that estate; and that by such words it gave William an *estate-tail*, with cross-remainder to the heirs of his sister, and, therefore, the absolute estate, which passed to his legatee; or if not, then it gave him the fee, subject to an executory devise over, which was too remote. 4 *H. & J.*, 431, *Horne vs. Lyeth.* 1 *Gill*, 426, *Gardner vs. Simmes.* 12 *G. & J.*, 84, *Hatton vs. Weems.* 2 *H. & J.*, 69, *Laidler vs. Young.* 4 *H. & McH.*, 393, *Davidge vs. Chaney.* 2 *Gill*, 238, *Mitchell vs. Mitchell.*

3rd. That if the words, *"if either of them does not survive"* import survivorship at the death of the widow, and the word *"heirs"* is not a word of limitation, but of substitution, then the children of the testator took, *at his death*, vested interests in the bequest, defeasible by their death before the widow; that on the death of William, leaving the widow surviving, the devise over "to his heirs" took effect as a substitutional devise for that to himself, and that under such devise "to his heirs" it vested absolutely (and to the exclusion of the further devise over to the heirs of the other) in those who were, *by law*, at the death of William, his heirs as to *personalty*, and entitled, as such, to succeed to it, viz., his distributees under our statute, and that, therefore, the appellant, as widow of William, and distributee as such, was entitled, at his death, under said devise over, to the one-half of William's original share of the bequest over to the children, in equal halves. 1 *Roper on Legacies*, 619 to 622. 2 *Wms. Excrs.*, 1092, 1093. 5 *Ves.*, 207, *Harrison vs. Foreman.* 1 *Jac. & Walk.*, 388, *Vaux vs. Henderson, in note (c.)* 2 *Mylne & Keene*, 69, *Gittings vs. M'Dermott.* 17 *Eng. Law & Eq. Rep.*, 267, *Jacobs vs. Jacobs.*

3rd. As to the *second clause* of the will, by which the testator devises to Isabella Power an annuity of $30 for life, and then directs, "at her death it is to go back equal to my two children, William and Anne, *or to their surviving heirs*," it is insisted, in addition to the points above stated, as applicable to the investment for the widow's annuity, which equally apply

to the investment for this annuity, that, in any view, under this devise, with no such limitation over, as in the preceding one, William acquired title to the one-half of the subject of the devise, (whatever it was,) which passed to his devisee, the appellant.

4th. As to the *third* or *residuary* clause, it is insisted, that there is no error in that part of the decree below which distributed the surplus, because this devise, of *the balance of his estate*, gave to William a fee or absolute estate in half the residue; and that the same result would follow if this devise only gave a life-estate, or whatever its operation, as in that event, William, as one of the two heirs-at-law and distributee of his father's estate, would have taken the half of this residue, so far as it was undevised, and his will passed it to the appellant, his widow and devisee.

5th. But if the above views should not be sustained, it is then insisted, that the words of the *first clause* of this will are so repugnant that they cannot be reconciled, and afford no clue to expound the uncertain meaning of the testator, and that it is, therefore, *void* for *uncertainty*, and this court cannot insert or transpose words for the purpose of giving a meaning to an instrument which has none. 2 *Roper on Legacies*, 1473 to 1474. 1 *Jarman on Wills*, 315, 316.

*Thos. S. Alexander* for Jenkins and his children insisted, that there is no such latent ambiguity on the face of this will as to make it void for *uncertainty;* and that the court, in construing the devise in favor of the widow of the testator, must consider that she is not a *gratuitous*, but a *preferred* legatee, for by the act of 1798, ch. 101, sub-ch. 13, sec. 5, she is a purchaser of the annuity thus given to her for a *fair consideration;* she takes as a creditor, and, therefore, has a *charge* on the realty for the payment of the annuity in her favor. 10 *G. & J.*, 113, *Gibson vs. McCormick.* 2 *Ves., Sen.*, 420, *Blower vs. Morret.* He then argued—

1st. That the testator, in the event of an election on the part of his widow to take the annuity of $1000, intended that a part of his estate, adequate to raise that income out of his

rents or annual revenue, should be reserved and dedicated, during her life, to the payment of her annuity as it should accrue, out of the annual income thereof.   After her death this principal estate, with the accumulations thereof, was to be divided or distributed to his two children, if then living.   If either child should die before the widow, leaving children, the division was to be between those children and the surviving child of the testator.   If either died without heirs the whole was to go to the survivor.   If both died leaving the widow and one only left children, *(which is the actual event,)* the whole was to go to those children.   The limitation over, after the death of the widow, is contingent on that event, and the expression *"heirs,"* in the limitation, is equivalent to children. The cases of *Oldham vs. Slatter*, 3 *Simons*, 84, and *Clough vs. Wynne*, 2 *Madd.*, 439, are sufficient to show that the expression, *"the amount of the above,"* in the devise over, denotes the principal estate out of which the annuity is to arise, and that the devise over passes this *entire* interest, unless a contrary intent is plainly expressed by the testator.   Giving the interest of personalty, without limitation, passes the whole interest, unless there are words used to confine it to a life interest, and by the act of 1825, ch. 119, devises of real estate, without words of perpetuity or limitation, pass the entire and absolute estate and interest of the testator, in such real estate, unless it appears, by devise over, or by words of limitation, or otherwise, that he intended to devise a *less estate* and interest. The *vesting* of the devise over to the children is postponed to the death of the *life-tenant,* that being the period at which the property is to be enjoyed by them, (3 *Ves.*, 536, *Mackell vs. Winter,)* and the words of *survivorship* are to be referred to the period of division and enjoyment, unless there be *special intent* to the contrary.   Such is the general rule announced by *Sir John Leach* in *Cripps vs. Wolcott, et al.*, 4 *Madd.*, 11. See also 8 *Simons*, 132, *Gibbs vs. Tait.*   Here the will gives to the wife $1000 per year, *during her natural life*, and, *at her death*, the amount of the above is to go, in equal halves, to his two children, but should *either* of them *not survive*, then it is to go to their heirs, or to the surviving heirs of either, in

case the other leaves none.   The word *"survive"* is a relative term.   To what does it relate?   Whom or what event are the children to survive?   Is it not plain that the reference is to the wife to whom the testator had just given a life annuity, and to the event of her death which he had then just previously mentioned?   This is clearly the plain and natural reading of this clause, and by so reading it, and postponing the period of the *vesting* of these devises, to the death of the wife, the whole will is made consistent with itself, and every word in it has a meaning and an operative effect.   See also on this point 6 *Taunt.*, 485, *Hatch vs. Bluck; 5 G. & J.*, 97, 98, *Hill vs. Hill.*

2nd.  That the annuity to the testator's sister was likewise intended to be charged on a part of the testator's estate, and the first devise of the will, making provision for the wife and children, operates on a sufficiency of the estate to provide for the payment of this annuity.

3rd.  That the children, the parties interested, have determined the extent and particulars of the estate in which said devise is to operate, by their conveyance to Ann Power and Isabella Power mentioned in the proceedings.   Subject, therefore, to the charge for payment of these annuities, the said mortgaged premises have become the right of the children of Mrs. Jenkins, deceased.   The decree is wrong, therefore, in so far as it directs that any surplus which may remain, after the investment of a sum sufficient to provide for the payment of the annuities to Ann Power and Isabella Power, shall be divided between Elizabeth Power, as devisee of William Power, and the children of Mrs. Jenkins.

BARTOL, J., delivered the opinion of this court.

The only question which it is necessary for us to determine on this appeal, is, what are the rights of the parties to the particular fund, upon which the decree of the Circuit court operates?

It appears from the record, that after the death of the testator, Ann Power, elected to take the annuity of one thousand dollars for her life, as provided by the will; and afterwards

William Power with Thornton A. Jenkins and wife, united in a mortgage, conveying certain real estate of which the testator died seized, for the purpose of securing to said Ann Power and Isabella Power, the payment of the life annuities respectively given to them by the will. The bill in this case was filed by said life annuitants, and Elizabeth Power the widow and sole devisee of William Power, and on the 22nd day of June 1854, the said real estate embraced in the mortgage, was decreed to be sold, and the fund now in controversy is the proceeds of said sale.

The decree or order from which this appeal was taken, was passed in said cause on the 17th day of September 1855, and, after directing the investment of so much of said fund, as will be sufficient to yield the annuities or yearly sums of one thousand dollars, and of thirty dollars to be paid over to said annuitants respectively, the said decree proceeds to adjudge and order that, on the death of the life annuitants, the principal of said investment shall be paid over to the child or children of Ann Jenkins, who may then be living; to the exclusion of the devisee and representative of William Power, (reserving however, for future decision, the rights of Thornton A. Jenkins, the husband of Ann Jenkins,) and that the surplus of the proceeds of sale, which shall remain after the investments are made, shall be paid, the one-half thereof to Elizabeth Power, and the one-half to the children of Ann Jenkins deceased. From the latter part of the decree, awarding one-half of the surplus to Elizabeth Power, Jenkins and his children have appealed. But this appeal, we are clearly of opinion, cannot be sustained; for whatever may be the construction of the 2nd and 3rd clauses of the will, Elizabeth Power as devisee of William Power, would be entitled to one-half of said surplus under the residuary clause.

Mrs. Elizabeth Power has appealed from that part of the decree which awards to the child or children of Ann Jenkins, after the life annuities shall cease, the principal of the fund invested; and in our opinion that part of the decree *is* erroneous, and must be reversed.

In the view we have taken of this case, the right to that

58      v. 13.

fund, does not in any manner depend upon the construction of the words of the second and third clauses of the will, which dispose of the sums given to Ann Power and Isabella Power, after the death of the annuitants.   The bequests in the will to Ann and Isabella, are pecuniary legacies, which are not, either by the terms of the will, or by operation of law, chargeable upon the real estate.   See *Stevens vs. Gregg,* 10 *G. & J.,* 143.   *Cornish vs. Willson,* 6 *Gill,* 320.

Even if it were admitted, without however meaning to decide that question, that Ann Power, the widow, might by reason of her rights under the act of Assembly, as "purchaser with a fair consideration," be entitled to charge her annuity upon the realty, that right could not be claimed by the other life annuitant, nor by the parties to whom the annuities are given, after the death of the life annuitants.

They are mere pecuniary legatees, who can no more charge the realty with the payment of their legacies, than could Isabella the annuitant for life do so, independently of the mortgage.

By the residuary clause of the will, the real estate which has been sold, was vested in fee in William Power and Ann Jenkins.   The mortgage, by its terms and legal effect, created a lien upon the estate conveyed, only in favor of the mortgagees, Ann and Isabella, and to secure to them the payment of the two annuities for life given to them by the will.   When they shall have been paid, the whole purpose of the mortgage will be gratified.   Whoever may be entitled to the legacies after the death of the life annuitants, cannot claim to subject the lands mortgaged, to the payment of their legacies.   This would be giving an effect to the mortgage not warranted by its terms, or contemplated by the parties to it.   After its execution the equity of redemption remained in the mortgagors, and, upon the payment of the sums secured to Ann and Isabella, the property mortgaged would revert to the mortgagors, as if no such mortgage had been made; and, as a consequence, the proceeds of the sale, subject only to the claim of the life annuitants, remain the property of the mortgagors, the one-half thereof belonging to the children of Ann Jenkins, subject

to the *curtesy* rights of her husband Thornton A. Jenkins; and the other half to Elizabeth Power, widow and sole devisee of William Power deceased; and the cause will be remanded, so that a decree may be passed in accordance with the opinion of this court.

*Decree reversed and cause remanded.*